## Richmond

CITY OF SALEM, ET AL.

V.

HASKEL W. COLEGROVE

Record No. 831322.

October 12, 1984.

Present: All the Justices.

*Gary E. Tegenkamp (David B. Hart; Woodward, Fox, Wooten & Hart, P.C.,* on briefs), for appellants.

*Richard M. Thomas (Lichtenstein, Weckstein & Thomas,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This workers' compensation appeal raises the question whether the "reasonable and necessary vocational rehabilitation training services" provided for by Code § 65.1-88* include a four-year college course.

Haskel W. Colegrove, the claimant, suffered a serious compensable back injury in 1978 while working as a laborer on a refuse-collecting truck for the City of Salem. The City's insurance carrier paid for extensive medical treatment, including a spinal fusion. In July 1979, Dr. Robert A. Pruner, a physician chosen by the carrier, examined the claimant with respect to his fitness for selective work. Dr. Pruner reported:

> [I]t is not realistic to expect this patient ever to return to any type of heavy work which requires significant lifting, bending, or stooping maneuvers. My suggestion would be that he get into some type of job retraining program through the Department of Vocational Rehabilitation so that he can be trained to do some type of work which would avoid the above mentioned limitations.

Other treating physicians confirmed the claimant's continuing physical disability and suggested that he turn to a sedentary occupation. He was directed to avoid heavy lifting, stooping, or straining. The City's carrier engaged a private rehabilitation consultant to study the case, but there is no evidence that the claimant was ever offered light work or vocational retraining at the expense of the City or its carrier.

The claimant, on his own initiative, applied to the Virginia Department of Rehabilitative Services for assistance. That state agency paid part of his tuition at Virginia Western Community College, where he entered a computer science program in January 1980. He also received a subsistence allowance from the Veteran's Administration under the "G.I. Bill" and worked part-time at two desk jobs. In March 1982, he transferred to Virginia Polytechnic Institute and State University (V.P.I.) at Blacksburg, Virginia. This change required him to commute seventy-eight miles each day, which left him insufficient daily time to operate the computer terminals at V.P.I. As a result, he changed his major from com-

---

* Code § 65.1-88 (Repl. Vol. 1980) provides in pertinent part: "The employer shall also furnish or cause to be furnished, at the direction of the Industrial Commission, reasonable and necessary vocational rehabilitation training services."

puter science to accounting. He testified that his course of study was at all times approved by the Department of Rehabilitative Services as appropriate for him. It is clear from the record that his course of study leads to an occupation which, in the opinion of the treating physicians, is within his physical capability.

In addition to medical care and partial incapacity payments, the carrier voluntarily paid the claimant a cost-of-living supplement from the date of the accident until his return to part-time work in December 1979. Medical expenses and partial incapacity compensation were thereafter paid until the fall of 1982, when the claimant applied to the carrier for assistance with his educational expenses. This resulted in a voluntary payment by the carrier of partial tuition, the cost of books, and $100.00 toward transportation expenses. On December 9, 1982, the claimant wrote to the carrier, requesting additional transportation expenses relating to his educational program. The carrier made no further payments, but referred the matter to the Industrial Commission.

In March 1983, after a hearing, Deputy Commissioner Yates directed the City and its carrier to pay the claimant reasonable and necessary educational expenses, retroactive to July 1979, including the necessary transportation expenses associated therewith, and statutory cost-of-living adjustments. The full commission, upon review, affirmed the award in July 1983, except with respect to the issue of cost-of-living adjustments, which was remanded to the hearing level for further evidence.

On appeal, the City and carrier argue that, under the facts of this case, the language of Code § 65.1-88 cannot properly be read to include a four-year college education, including transportation costs, as "reasonable and necessary vocational rehabilitation training services." The claimant argues that the City and carrier are estopped from making this argument because of their payment for part of his tuition, books, and transportation in the fall of 1982.

The question whether "reasonable and necessary vocational rehabilitation training services" authorized by Code § 65.1-88, as applied to a particular claimant's case, include a college education, is a mixed question of law and fact. The Industrial Commission's determination of such questions is not binding upon us. *Iron Company* v. *Jenkins,* 207 Va. 399, 403, 150 S.E.2d 120, 123 (1966).

■ We defined the significant terms of the statutory phrase in question here in *Low Splint Coal Co.* v. *Bolling,* 224 Va. 400, 297 S.E.2d 665 (1982):

> The kind of services within the meaning of the paragraph is assistance by competent teachers or therapists to enable a disabled employee to learn a new skill to prepare him for reemployment.

*Id.* at 406-07, 297 S.E.2d at 668.

> "Vocational" means "of, relating to, or being in training in a *specific skill or trade* . . . ." "Rehabilitation" is "the process of restoring an individual . . . to a useful and constructive place in society through some form of vocational . . . or therapeutic retraining . . . ."

*Id.* at 407, 297 S.E.2d at 668, n. 2 (emphasis added) (citation omitted).

■ The Supreme Judicial Court of Maine, in *Lancaster* v. *Cooper Industries,* 387 A.2d 5, 9 (Me. 1978), observed that the purpose of vocational rehabilitation in workers' compensation law is twofold: to restore the employee to gainful employment and to relieve the employer's burden of future compensation. The court, in that case, suggested certain standards for the determination of the appropriateness of any proposed program of vocational rehabilitation, which included "the relative costs and benefits to be derived from the program." *Id.,* 387 A.2d at 9.

■ The four-year program of college education embarked upon by the claimant in this case, viewed in the light of the foregoing standards, falls far outside the terms of the Virginia statute as we defined them. Rather than retraining the claimant for a "specific skill or trade," as required by our ruling in *Low Splint Coal Co.,* it undertakes to expand the claimant's occupational horizons to embrace a wide range of business, industrial, and professional callings. While such self-improvement is highly laudable, particularly in view of the claimant's independent quest for it, unaided by the employer or carrier, it is outside the range of benefits provided by the General Assembly. It fails to meet the "reasonable and necessary" standard of Code § 65.1-88 when any fair consideration is given to "the relative costs and benefits to be derived from the program."

The claimant further argues, however, that the employer and carrier are estopped from denying the compensability of his educational program because of the carrier's voluntary payment of part of his expenses at V.P.I. in the fall of 1982. We do not agree. In the absence of fraud, elements necessary to establish an equitable estoppel are a representation, reliance, a change of position, and detriment. *T . . . v. T . . .,* 216 Va. 867, 873, 224 S.E.2d 148, 152 (1976). The claimant has shown none of those elements here. *See also Stuart Circle Hosp.* v. *Alderson,* 223 Va. 205, 288 S.E.2d 445 (1982) (carrier's voluntary payment of compensation to claimant did not estop it from relying on the statute of limitations as a bar to compensation).

For the foregoing reasons, the award will be reversed and the case remanded to the Industrial Commission for further proceedings consistent with this opinion.

*Reversed and remanded.*